IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACOB CHARLES FARLEY,
Plaintiff,

v.

BRITTANY BORRELLI, *et al.*,
Defendants.

CIVIL ACTION NO. 19-CV-5371

## MEMORANDUM

SÁNCHEZ, C.J.                                                        FEBRUARY 26, 2020

       Plaintiff Jacob Charles Farley brings this pro se prisoner civil rights action pursuant to 42 U.S.C. § 1983. Farley alleges he was wrongfully charged with aggravated harassment and institutional vandalism and "denied justice" after prison officials at Northampton County Prison failed to fully investigate an incident that occurred between Farley and a correctional officer. Farley has also moved to proceed in forma pauperis. Because it appears that Farley is unable to afford to pay the filing fee, the Court will grant him leave to proceed in forma pauperis.[1] The Court will, however, dismiss the Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] By Order dated November 20, 2019, the Court initially denied Farley's request to proceed in forma pauperis without prejudice based on his failure to sign his motion and submit a certified copy of his prisoner account statement. (ECF No. 4 at 1.) The Court directed Farley to either pay $400 to the Clerk of Court or to file a signed motion to proceed in forma pauperis along with a certified copy of his prisoner account statement within thirty days. (*Id.*) Farley subsequently filed the pending Motion to Proceed In Forma Pauperis which is now properly before the Court for review, along with his certified prisoner account statement. (ECF Nos. 5, 6).

## I. FACTUAL ALLEGATONS[2]

Farley, a prisoner currently incarcerated at Northampton County Prison, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights by Defendant Brittany Borrelli, a Correctional Officer at Northampton County Prison, Shield No. 469 ("CO Borrelli"), and Defendant Charles Horvath, a "Jail Investigator" at the Prison. (ECF No. 2 at 2.)[3] Farley sued the Defendants in both their individual and official capacities.

Farley's allegations relate to an interaction between Farley and CO Borrelli which occurred on or about July 26, 2019. (*Id.* at 4.) Although the specific details are a bit unclear, Farley alleges that on that date he "had hit [his] head on the glass window" of his cell causing it to "shatter[]" and leaving Farley with "blood in [his] eyes[.]" (*Id.* at 4-5.) Farley claims that after the window was shattered, CO Borrelli "reached into [his] window that was covered in blood" to spray Farley with mace. (*Id.*) Farley asserts the can of mace CO Borrelli attempted to use did not function properly which caused her reach for a different can of mace from anther correctional officer nearby. (*Id.* at 5.) Once she obtained the new can of mace, Farley alleges CO Borrelli "put her arm back in the [broken] window" of his cell which caused Farley's blood to get on her arm and uniform.[4] (*Id.*) Farley claims this incident "is all on camera" but that he has been denied his "right to prove [his] in[n]ocence by [way of] the footage." (*Id.* at 4.) He further contends that nonparty Correctional Officer Watson witnessed this incident and provided Farley with a signed statement. (*Id.* at 5.)

---

[2] The factual allegations set forth in this Memorandum are taken from Farley's Complaint.

[3] The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

[4] There is no allegation that CO Borrelli ultimately ended up spraying Farley with mace.

2

Farley alleges Defendant Horvath was supposed to investigate this incident, but CO Borrelli fabricated a story to Horvath to explain how she got Farley's blood on her arm and uniform. (*Id.* at 4.) Farley contends CO Borrelli "told . . . Horvath that [Farley] spit blood at her" to explain its presence. (*Id.*) According to Farley, Horvath, apparently accepting CO Borrelli's explanation of the events, did not conduct a full investigation and thereby "denied [him his] rights to be investigated" with respect to this matter. (*Id.*) Based on this incident, Farley was charged with one count of aggravated harassment by a prisoner[5] and one count of institutional vandalism of a state government building.[6] *Commonwealth v. Farley*, CP-48-CR-0003091-2019 (Northampton Count Court of Common Pleas) at 2. He contends "the charges being pressed against [him] are false and fabricated and that [he] is being denied justice and [his] rights to view the footage and" to have a fair investigation of the incident. (*Id.* at 7.) Farley claims he has submitted multiple grievances regarding this incident, but they have all been ignored, and that Horvath "threatened to press charges" if Farley continued to ask Horvath more questions about the incident via the grievance request slips he submitted. (*Id.* at 6-7.)

Farley alleges he received seven (7) stiches while in prison, but was not taken to a hospital at the time of the incident. (*Id.* at 5.) He claims he later learned that his nose was broken from the

---

[5] *See* 18 Pa. C.S.A. § 2703.1 ("A person who is confined in or committed to any local or county detention facility, jail or prison or any State penal or correctional institution or other State penal or correctional facility located in this Commonwealth commits a felony of the third degree if he, while so confined or committed . . . intentionally or knowingly causes or attempts to cause another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material.")

[6] *See* 18 Pa. C.S.A. § 3307(a)(3) ("A person commits the offense of institutional vandalism if he knowingly desecrates, . . ., vandalizes, defaces or otherwise damages: . . . (3) any school, educational facility, community center, municipal building, courthouse facility, State or local government building or vehicle or juvenile detention center[.]")

3

impact (presumably from hitting his head on the window), but he was "not given proper medical treatment." (*Id.*) As relief, Farley states he "would like to discuss [his] options[,]" but he also notes that he does "wish to press charges on both" Defendants. (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant Farley leave to proceed in forma pauperis because it appears that he is incapable of paying the fees to commence this civil action.[7] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Farley is proceeding pro se, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

Farley does not clearly articulate which specific constitutional rights he claims CO Borrelli and Horvath violated in this case with respect to the July 26, 2019 incident detailed above.[8]

---

[7] However, because Farley is a prisoner, he is obliged to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

[8] Farley seeks to bring these claims against CO Borelli and Horvath in both their individual and official capacities. (ECF No. 2 at 2.) Official capacity claims against corrections officials are indistinguishable from claims against the entity that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Northampton County is the entity that

4

Instead, Farley makes passing references to general concepts like "cruel and unusual punishment[,]"[9] the "denial of justice[,]" and being "denied" various rights to an investigation and to prove his innocence by way of video footage. (ECF No. 2 at 3-4, 7. Farley suggests Horvath violated his rights by not fully investigating the July 26, 2019 incident or his subsequent complaints about that incident. To the extent Farley is raising such a claim pursuant to 42 U.S.C. § 1983, his claim fails, as there is no free-standing right to a government investigation. *Graw v. Fantasky*, 68 F. App' x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without

---

employs the corrections officials named as Defendants here. Accordingly, official capacity claims against them are more properly brought against Northampton County itself.

A municipal body or other local government unit which is not part of a state for Eleventh Amendment purposes, such as Northampton County, may be a "person" subject to suit under § 1983. *Monell*, 436 U.S. at 690-91. However, Farley has failed to state a claim against Northampton County because nothing in his Complaint alleges that the purported violation of his constitutional rights stemmed from a municipal policy or custom. *See Monell*, 436 U.S. at 694 (local governments are not liable under § 1983 "for an injury inflicted solely by [their] employees or agents," but are liable if a municipal custom or policy caused the plaintiff's injury). Accordingly, to the extent Farley's official capacity claims are construed as claims against Northampton County, those claims will be dismissed.

[9] Farley asserts in a general, conclusory fashion that the Defendants violated his right to be free from "cruel and unusual punishment[.]" (*See* ECF No. 2 at 3.) With respect to the nature of his injuries, Farley alleges that he was "given 7 stiches in the jail" but that he "was not taken to a hospital[.]" (*Id.* at 5) He contends that he later learned his "nose was broken from the i[m]pact" of hitting his head on the glass window, but claims that he was "not given proper medical treatment." (*Id.*)

The sporadic allegations of Farley's Complaint make it difficult to discern his precise claims. However, the Court does not understand Farley's Complaint to be, at its core, about deliberate indifference to serious medical needs under the Fourteenth Amendment. Farley did not sufficiently develop that claim or allege facts from which the Court could reasonably infer the existence of such a claim. *See Lewis v. Wetzel*, Civ. A. No. 19-3019, 2020 WL 883109, at * 2 n.1 (3d Cir. Feb. 24, 2020) (observing that the mention of a generalized legal theory which is "not develop[ed] as a claim in any way" may properly be interpreted as failing to raise "separate claim" independent of the remainder of the case). In any event, Farley does not allege facts regarding the extent of his need for medical care, or his attempts or requests to obtain treatment from the named Defendants. Accordingly, even if his Complaint could be understood to raise such a claim, his vague, conclusory statements set forth above, standing alone, cannot support a plausible claim for deliberate indifference to his medical needs against the Defendants. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

5

another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.") (quotations omitted); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). Moreover, to the extent Farley seeks relief in the form of "pressing charges" against CO Borrelli and Horvath, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Because Farley cannot state a plausible claim based on alleged failures of officials to investigate crimes or prosecute individuals, this claim will be dismissed.

Beyond his claims regarding the lack of an investigation and his desire to press charges, Farley also contends CO Borrelli fabricated her story to Horvath and that the criminal charges filed against him arising from the July 26, 2019 incident are false, are affecting his release, and represent a denial of justice to him. Additionally, Farley claims the July 26, 2019 incident was captured by video surveillance at the prison and that he has been denied access to the footage to prove his innocent. (ECF No. 2 at 4.) In analyzing these issues, it is important to note that at the time Farley submitted the Complaint to the Court on November 15, 2019, Farley's criminal proceeding on the charges of aggravated harassment by a prisoner and institutional vandalism were actively proceeding in state court. Since the time of that submission, however, the facts and circumstances have changed considerably. The criminal docket for the Northampton County Court of Common Pleas proceeding clearly reflects that as of February 12, 2020, Farley entered into a negotiated plea agreement, and pled guilty to an updated charge of simple assault and institutional vandalism, while the aggravated harassment by a prisoner charge was withdrawn. *Commonwealth v. Farley*, CP-48-CR-0003091-2019 (Northampton Count Court of Common Pleas) at 2-3, 8.

Farley's February 12, 2020 guilty plea is meaningful because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "It is well-settled that a defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights, including the privilege against compulsory self-incrimination, the right to confront one's accusers, the right to a jury trial, the right to a speedy trial, and the right to require the prosecutor to prove the crime beyond a reasonable doubt." *Beto v. United States*, Civ. A. No. 01-1669, 2002 WL 1374243, at *2 (E.D. Pa. June 25, 2002) (*citing Tollett*, 411 U.S. at 267). Although Farley's Complaint does not clearly articulate the legal theories underlying his each of his claims, it is clear he alleges that the actions of CO Borelli and Horvath related to the July 26, 2019 incident violated several of his constitutional rights and that he was denied access to the video footage that could prove his innocence. In this circumstance, however, Farley's February 12, 2020 guilty plea represents a break in the chain of events in his criminal proceeding and marks the point at which Farley waived his ability to challenge the alleged violations of his federal constitutional rights.

Even broadly construing the Complaint to allege that the failure to disclose the video footage or the initiation of false charges undermines Farley's guilty plea, such a claim is not cognizable. That is because, "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed

7

on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). Here, the conviction or sentence arising from the July 26, 2019 incident was not reversed on direct appeal, was not expunged by executive order, was not declared invalid by a state tribunal, and was not called into question by the issuance of a writ of habeas corpus. And because Farley cannot maintain a claim under § 1983 at this time, his claims will be dismissed without prejudice subject to refiling as a new case if a challenge to his conviction or sentence is later resolved in his favor.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Farley leave to proceed in forma pauperis and dismiss his Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Farley will not be given leave to amend as amendment would be futile. An appropriate Order follows.

BY THE COURT:

_____
JUAN R. SÁNCHEZ, C.J.

8